PASTERNAK (Michelene), Plaintiff and Respondent, v. PASTERNAK (Stanley) and wife, Defendants and Appellants.

*May 3—June 6, 1961.*

For the appellants there were briefs and oral argument by *Ken Traeger* of Gresham.

For the respondent there was a brief and oral argument by *E. B. Martineau* of Marinette.

FAIRCHILD, J. 1. *Was the stipulation "made in court and entered in the minutes?"* Sec. 269.46 (2), Stats., provides:

"No agreement, stipulation, or consent, between the parties or their attorneys, in respect to the proceedings in an action or special proceeding, shall be binding unless made in court and entered in the minutes or made in writing and subscribed by the party to be bound thereby or by his attorney."

Appellants claim that the stipulation was neither made in court nor entered in the minutes. On the one hand, the reporter's transcript of the stipulation and the order signed by the court at the foot of the transcript each recite that the stipulation was made in open court. On the other hand, the minute book contains no entry reflecting any proceeding in court in this action on September 29th. There was no other proof from which the presence or absence of the clerk, the sheriff, or their deputies could be inferred.

What apparently occurred was typical of many settlements reached just as a hearing or trial in a matter is about to begin. At the time of the hearing on appellants' motion to set aside the judgment, Judge MURPHY dictated the following statement:

"The court by reason of a definite, independent recollection and for the purpose of completing this record, states that several conferences were held by the judge with Attorney Wittkopf, Attorney Allen Wittkopf representing the plaintiff and Robert D. Murphy representing Walter Pasternak; that several proposals were made and an agreement was finally

reached between the attorneys and Mr. Robert Murphy saying he would recommend to all of the defendants the settlement offered by Mr. Wittkopf as attorney for the plaintiff. Attorney Robert Murphy left the courtroom with Walter Pasternak, Stanley Pasternak, and Paulina Pasternak and went into the lawyers' conference room. After about an hour all of the parties and Robert D. Murphy returned into the courtroom and Mr. Murphy said the proposition offered by the plaintiff was agreeable except that Paulina Pasternak wanted to preserve her mortgage on the premises. There was a long colloquy between the lawyers and the court and between the judge and the parties all seated in the courtroom within the hearing of everyone. The court especially and pointedly questioned Stanley Pasternak as to the provisions of the proposed settlement and after the court was thoroughly satisfied that everybody understood what was agreed upon, the court with the consent of the parties dictated in open court the settlement."

While Stanley and Paulina denied, somewhat vaguely at times, that they fully understood that Stanley agreed to pay $5,000 out of his own pocket, and the testimony of Attorney Murphy is not entirely clear, all the other testimony is consistent with the statement of Judge MURPHY just quoted.

"When a judge is attended by the court officials and the parties and their counsel and witnesses and proceeds with the dispatch of judicial business, the court is in session, even if the sitting happens to be in a portion of the building that does not have the word 'courtroom' upon its doors." [1]

Although sec. 59.39 (4), Stats., requires the clerk to keep the minute book and write therein a brief statement of all proceedings in open court, and no entry was made showing that court was in session at the time this stipulation was made, the recitations in the transcript attested by the reporter and in the order signed by the court and filed in the office of the clerk are at least presumptively correct. While the

---

[1] *Bloomer v. Bloomer* (1928), 197 Wis. 140, 142, 221 N. W. 734.

reporter did not record the statements made by the parties or the attorneys before the stipulation was dictated, it is undisputed that all the parties were present at the time of the dictation. We conclude that the record sufficiently shows that the stipulation was made in court.

This court has held that where the judge makes the minutes of the stipulation, that is sufficient for the purposes of sec. 269.46 (2), Stats. "There is nothing in sec. 269.46 (2), Stats., specifying the person who shall enter a stipulation in the minutes." [2]

It has been held that a record of a stipulation made by the official court reporter constitutes a sufficient entry in the minutes under sec. 269.46 (2), Stats.[3]

We conclude that the stipulation of settlement in this action was binding, and supported the judgment entered after Stanley failed to comply with its terms.

*2. Claim of unfairness in the compromise settlement.* In the circuit court appellants apparently confined their attack to the matters previously discussed in this opinion.

On appeal, they suggest that the settlement was unfair because Michelene did not have title to the farm and Stanley therefore may have obtained too little in return for the obligations he assumed. Michelene had claimed title in her complaint in this action and whether she had it was one of the issues which the parties were compromising. It does not appear that she had ever divested herself of whatever interest she acquired as grantee (with Walter) in the 1956 deed from the elder Pasternaks.

In any event, she had whatever interest she received as grantee in Walter's deed. Appellants claim that this latter deed was ineffective because it violated the restriction against sale contained in the 1956 deed from Stanley and Paulina.

---

[2] *Urban v. Trautmann* (1946), 249 Wis. 264, 267, 24 N. W. (2d) 619.

[3] *Czap v. Czap* (1955), 269 Wis. 557, 560, 69 N. W. (2d) 488.

It is not at all clear, however, that a conveyance from Walter to Michelene constituted a "sale" within the meaning of the restriction in the deed in which they were both grantees, and whether it did constitute such sale would be one of the issues which the parties were settling.

Appellants also assert that Walter's deed to Michelene was a mortgage, and that he could redeem by payment according to its terms. We do not decide on the present record whether Walter's participation in the stipulation constituted a waiver of, or estopped him from exercising, his right to redeem. Appellants have not shown that Walter claims that he retained the right to redeem notwithstanding the settlement. But whatever his right may be since the settlement, by the terms of the deed he could only redeem by payment of $3,862.03 plus whatever payments Michelene made on the mortgages to Stanley and Paulina. It was evidently her claim that at the time of the settlement the amount which Walter would have been required to pay in order to redeem had grown to $6,000, and this amount would have increased if there had been no settlement and she had made further payments on the mortgages of Stanley and Paulina. By the terms of the settlement, Stanley agreed to satisfy his mortgage and to pay the mortgage to Paulina. Walter not only participated in the stipulation of settlement, but received substantial benefits from it, namely, the satisfaction of Michelene's $2,800 judgment and her agreement to pay his $400 note. It seems clear at the least, that if Walter should ever assert any interest in the farm as against Stanley, a court would be bound to give some effect, as a matter of equity, to Walter's participation in the settlement and resulting benefit to him.

Appellants' motion to set aside the judgment was orally denied within a year after the stipulation was made as well as within a year after judgment. The written order appealed from was not entered until more than a year after the stipula-

tion was made, although it was still within a year after notice of the judgment. It may be that at the time of entry of the written order, the circuit court had lost the power to relieve Stanley from the stipulation.[4] We have reviewed the matter, however, as if the time had not elapsed.

The fact that a settlement appears by hindsight to have been a bad bargain is not sufficient by itself to warrant relief. If it were clearly a bad bargain, that fact would have weight when coupled with the circumstance that a party did not have counsel at the time of entering into an oral stipulation and his claim that he did not understand its terms. In the case before us, the circuit court was satisfied that Stanley understood the terms of the settlement. At best, Stanley received title to the farm for $5,000 plus assumption of whatever balance was unpaid on the mortgage to Paulina and satisfaction of his own mortgage against it. At the worst he acquired a mortgage from which the farm could be redeemed. According to Michelene's claim, the amount required for redemption would exceed the amount Stanley paid. In any event, the settlement enabled Stanley to dispose of his son's financial obligations to Michelene and terminate the lawsuit she had begun against all three. The terms of the settlement were by no means so unfavorable as to lead to the inference that Stanley could not have understandingly assented to it. Considering all the circumstances, we find no abuse of discretion on the part of the circuit court in refusing to set the judgment aside.

*By the Court.*—Order affirmed.

---

[4] Sec. 269.46 (1), Stats.