# COURT OF APPEALS
# DECISION
# DATED AND FILED

## September 16, 2020

Sheila T. Reiff
Clerk of Court of Appeals

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP570**

Cir. Ct. No. 2019ME407

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE MENTAL COMMITMENT OF H.M.B.:

WAUKESHA COUNTY,

  PETITIONER-RESPONDENT,

 V.

H. M. B.,

  RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Waukesha County: LLOYD CARTER, Judge. *Appeal dismissed*.

¶1    DAVIS, J.[1]    "Heather"[2] appeals from an order for involuntary commitment.  For the reasons that follow, we find that her appeal is moot and dismiss.

¶2    On August 2, 2019, Heather was brought to a hospital emergency room because she was severely underweight.  An emergency detention order was issued several days later because Heather, who had been diagnosed with anorexia nervosa, sought to leave the hospital against medical advice.  On August 9, a court commissioner found probable cause to involuntarily commit Heather under WIS. STAT. § 51.20.

¶3    The final involuntary commitment hearing was held on August 21.  At the outset, Heather (through counsel) stated that she was "willing to stipulate that there is a basis for the Court to find that a commitment is appropriate at this point in time"—that is, that Heather had a mental illness, was a proper subject for treatment, and was dangerous under WIS. STAT. § 51.20(1)(a)2.c. and/or d.[3]  Accordingly, and upon agreement of the parties, the trial court entered into evidence two medical reports supporting the findings of dangerousness.  Heather stated that she was only contesting the level of care necessary under the involuntary commitment order, along with the related requirement for involuntary medication and treatment.  The hearing therefore focused on whether Heather

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d).  All references to the Wisconsin Statutes are to the 2017-18 version.

[2] For ease of reading, we refer to H.M.B. by the pseudonym used in her appellate brief.

[3] As relevant here, these standards are applicable where there is a substantial probability of physical impairment or injury to the individual, or where the individual cannot satisfy her basic needs for nourishment or medical care, creating a substantial probability of serious physical injury or death.

required inpatient care or whether, as she preferred, she could receive treatment in an outpatient setting.

¶4      The court heard the testimony of Dr. Paula Soung, Heather's primary care provider during her stay at the hospital. Soung discussed Heather's poor physical and mental state and concluded that Heather "require[d] continued inpatient mental health care for both mental health and nutritional rehabilitation." Heather did not testify but did provide a statement to the court in which she explained her preference for outpatient treatment. The trial court acknowledged Heather's wishes but determined that per her doctor's testimony, outpatient treatment "would seriously compromise her physical health." The court ordered a six-month involuntary commitment in an inpatient setting, along with involuntary medication and treatment (specifically, nutrition and hydration). Pursuant to the requirements of WIS. STAT. § 51.20, the commitment order included a prohibition on firearm possession.

¶5      Heather appeals from the commitment order; she also challenges the nonfinal order for involuntary medication and treatment. *See* WIS. STAT. §§ 51.20(13)(a)3. (involuntary commitment); 51.61(1)(g)3. (involuntary medication and treatment for an individual subject to a final commitment order). Heather acknowledges that she is no longer subject to either order[4] but argues that her case is not moot. According to Heather, this is because she suffers two

---

[4] Heather's orders for commitment and involuntary medication/treatment were set to expire on February 21, 2020; however, Heather was discharged from commitment on December 23, 2019, due to a finding that her condition was no longer treatable. Consequently, there appear to be no current commitment or treatment orders in place in this case.

collateral consequences from her commitment order: the firearms ban and "the negative stigma associated with a mental commitment."

¶6　　"Mootness is a doctrine of judicial restraint," **Marathon Cty. v. D.K.**, 2020 WI 8, ¶19, 390 Wis. 2d 50, 937 N.W.2d 901, under which we decline to reach an issue where its resolution "cannot have any practical effect upon an existing controversy," **Portage Cty. v. J.W.K.**, 2019 WI 54, ¶11, 386 Wis. 2d 672, 927 N.W.2d 509 (citation omitted). Our supreme court recently held that the expiration of a commitment order does not moot a challenge to that order where the individual is subject to the collateral consequence of a lasting firearms ban. **D.K.**, 390 Wis. 2d 50, ¶¶20-25. In essence, the appeal in **D.K.** was not moot because even though its resolution could have no impact on the expired commitment order itself, the appellant continued to experience very real and important consequences stemming from that order.

¶7　　The problem with applying that reasoning here is that Heather did not contest the issuance of the commitment order at the trial level. Rather, she stipulated that she met the statutory criteria for a WIS. STAT. § 51.20 commitment. *See* § 51.20(1)(a), (10)(c); *see also* **J.W.K.**, 386 Wis. 2d 672, ¶17. Heather's challenge below was only regarding the disposition; that is, the appropriate level of care. *See* § 51.20(13)(a)3., (c)2. (if the basis for commitment under subsec. (1)(a) is proven, the court shall order outpatient or, where necessary, inpatient commitment and shall designate the maximum level of inpatient treatment facility, if any). Although this issue was vigorously contested, the stipulated commitment itself would have necessitated a firearms ban regardless of Heather's treatment setting. *See* § 51.20(13)(a)3., (cv) (if the court determines that § 51.20(1)(a) is met, the court "*shall* order the individual not to possess a firearm" (emphasis added)). In addition, we cannot determine, and Heather does not

address, why the negative stigma associated with *inpatient* care represents a distinct collateral consequence.  Therefore, our resolution of the question raised on appeal—the proper treatment setting for Heather—can have no practical effect on her present circumstances.

¶8      Although Heather's challenge to the disposition phase makes up the thrust of her appeal, Heather also contests the underlying commitment order on the grounds that the one or more of the conditions for commitment were not satisfied. In particular, she argues that the testimony was insufficient to establish that she met the statutory criteria for dangerousness.  Whether Heather was dangerous under WIS. STAT. § 51.20(1)(a), however, was encompassed by her stipulation that "commitment is appropriate at this point in time."  As a consequence of that stipulation, and per the agreement of the parties, the trial court dispensed with the necessity for expert testimony as to the basis for commitment.  Instead, the court entered into evidence two medical reports concluding that Heather was a danger to herself, and it confined the hearing to the disputed issue of treatment setting.  In such instance we need not, and indeed cannot, address the sufficiency of the evidence supporting the underlying commitment to which that disposition pertained. *See Wyandotte Chems. Corp. v. Royal Elec. Mfg. Co., Inc.*, 66 Wis. 2d 577, 589, 225 N.W.2d 648 (1975) (oral stipulations made in open court, taken down by the reporter, and acted upon by the parties and court are generally valid and binding on appeal); *see also* WIS. STAT. § 807.05 (providing the statutory basis for the binding effect of trial stipulations).  Heather's appeal is thus moot because the only issue properly raised on appeal—her challenge to the terms, but

not the existence, of her expired commitment order—can have no practical effect on these parties.[5]

¶9 Of course, even if an issue is moot as a factual matter, we may choose to decide it where a recognized exception to the mootness doctrine applies; for example, where "the issue is of great public importance" or "is likely of repetition and evades review." *D.K.*, 390 Wis. 2d 50, ¶19. Heather generally alludes to this discretionary authority but does not provide a specific rationale for invoking it here.[6] Nor, on independent review, can we discern any obvious need to reach the merits so as to further develop the law on this topic. The issue of

---

[5] To the extent Heather challenges the medication and treatment order on a stand-alone basis, she does not develop a separate argument as to why that order is not moot. Nor can we independently discern any lasting collateral consequence from that order, such that we might review it. We therefore find that Heather's challenge to that order is moot as well. In any case, Heather's only argument regarding that order is found in her reply brief. We remind litigants that we do not consider arguments raised for the first time in reply. *See Rychnovsky v. Village of Fall River*, 146 Wis. 2d 417, 424 n.5, 431 N.W.2d 681 (Ct. App. 1988).

[6] Citing *Marathon County v. D.K.*, 2020 WI 8, 390 Wis. 2d 50, 937 N.W.2d 901, Heather claims, "It is now settled under Wisconsin law that a review of an expired commitment order is not moot," such that "the Court must review Heather's case for error." Heather is incorrect to the extent she suggests that an appeal from an expired commitment order is *never* moot: *D.K.* merely held that a live controversy might still exist by virtue of the lasting collateral consequences of the order. *Id.*, ¶¶19-25. We note that our supreme court has as recently as 2019 resolved a WIS. STAT. ch. 51 case on mootness grounds. *See Portage Cty. v. J.W.K.*, 2019 WI 54, ¶28, 386 Wis. 2d 672, 927 N.W.2d 509. Moreover, since *D.K.*, this court has continued to assess mootness in cases involving an expired commitment order on a case-by-case basis, with reference to potential collateral consequences and the traditional exceptions to mootness as the recognized grounds on which mootness may be avoided. *See, e.g.*, *Rock Cty. v R.J.*, No. 2020AP93, unpublished slip op. ¶¶13-14, 21-26 (WI App Aug. 13, 2020). As previously explained, such grounds do not exist in this case.

We note that our supreme court has recently granted review in *Portage County v. E.R.R.*, No. 2019AP2033, unpublished slip op. (WI App May 21, 2020), to consider the applicability of the mootness doctrine in the context of consecutive recommitment orders. Since Heather challenges the disposition of the initial commitment order and, to our knowledge, is not under a current recommitment order, we do not believe the supreme court's decision in *E.R.R.* would likely affect our analysis or the outcome of her appeal.

appropriate treatment setting has been the subject of prior decisions, and the resolution of Heather's appeal on the merits would involve the application of well-settled principles to the facts of her case. *See, e.g.*, ***J.R.R. v. State***, 145 Wis. 2d 431, 427 N.W.2d 137 (Ct. App. 1988); ***Dodge Cty. v. Ashley O.P.***, No. 2009AP2908, unpublished slip op. (WI App Mar. 18, 2010); ***Waukesha Cty. v. Robert C.B.***, No. 2006AP1891, unpublished slip op. (WI App Dec. 13, 2006). We accordingly dismiss on the ground that her appeal is moot.

> *By the Court.*—Appeal dismissed.

> This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.